IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-10-302-08 |
| | § | CIVIL ACTION NO. H-13-1877 |
| KENNETH LEE WASHINGTON, | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C.

§ 2255 is Movant Kenneth Lee Washington's § 2255 Motion to Vacate, Set Aside or Correct

Sentence (Document No. 556),[1] and the United States' Answer and Motion to Dismiss Movant's

§ 2255 Motion (Document No. 574).  After reviewing Movant's § 2255 Motion, the Government's

Answer and Motion to Dismiss, the record of the proceedings before the District Court in the

underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for

the reasons set forth below, that Movant Kenneth Lee Washington's § 2255 Motion to Vacate, Set

Aside, or Correct Sentence (Document No.  556) be DENIED, and the United States' Motion to

Dismiss (Document No. 574) be GRANTED.

## I.    Procedural History

Movant Kenneth Lee Washington ("Washington"), who is currently in the custody of the

United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255.  This

---

[1] Kenneth Lee Washington's  Motion to Vacate, Set Aside or Correct Sentence can be
found at Document No. 1 in Civil Action H-13-877 and at Document No. 556 in Criminal Action
No. H-10-302.

is Washington's first attempt at § 2255 relief.

On May 11, 2010, Washington was charged by Indictment with conspiracy in violation of 18 U.S.C. § 371 (count 1), wire fraud in violation of 18 U.S.C. § 1343 (counts 2-4), mail fraud in violation of 18 U.S.C. § 1341 (counts 5-7), loan application fraud in violation of 18 U.S.C. § 1014 (counts 12-13, 15-16, 17) and bank fraud in violation of 18 U.S.C. § 1344 (counts 21-22, 24-26, 27) (Document No. 1).  On April 8, 2011, Washington pleaded guilty, pursuant to a written Plea Agreement.  (Document Nos. 207, 215, Transcript of Rearraignment Hearing, Document No. 572).  At Washington's April 8, 2011, Rearraignment, the terms of the written Plea Agreement were summarized as follows by the Government:

> Mr. Washington will be pleading guilty to Count 1 of the indictment, which charges him with conspiracy to commit bank fraud in violation of 18, US code, Section 371.
>
> *　　　　　*　　　　　*　　　　　*
>
> Each defendant further agrees to waive his right to appeal except to a sentence imposed above the statutory maximum.  Each defendant agrees to waive his right to contest his conviction or sentence by means of post-conviction proceedings or collateral attack.  Each defendant also waives any right to have a jury decide the sentencing factors.
>
> The United States agrees not to oppose defendants' requests for a two-level decrease for acceptance of responsibility.  And if the defendants' offense level is in excess of 16 offense levels, then we'll not object to an additional offense level decrease by one.
>
> If each defendant persists in his plea of guilty through sentencing, the United States agrees to dismiss all–move to dismiss all remaining counts in the indictment; and each defendant agrees to cooperate in the prosecution of others and could be given consideration for a downward departure motion, at the discretion of the United States, in – under Section 5K1.1 of the sentencing guidelines, your Honor. (Document No. 572, p. 10-11).

The written Plea Agreement is signed by Washington and was discussed at his Rearraignment.  The written Plea Agreement specifically refers to relief under § 2255 and expressly states that Washington waives his right to seek § 2255 relief.  (Document No. 261, p. 5-7).  The signed Plea

Agreement makes clear that Washington is pleading guilty freely and voluntarily (Document No. 261, p. 13), and contains an Addendum, also signed by Washington, that states that he has "read and carefully reviewed every part of this plea agreement with my attorney, I understand this agreement and I voluntarily agree to its terms." (Document No. 261, p. 16). Moreover, the transcript of his Rearraignment hearing confirms that Washington understood the charges against him, the rights he would give up if he pleaded guilty, the possible penalties, the sentencing process, and that he was waiving both his right to appeal and to collateral review. (Document No. 527, 9, 17, 19-20, 27-30, 32-33). The record further reflects that the Government summarized the facts that it was prepared to prove if the case proceeded to trial. In response, Washington confirmed the accuracy of the summary and his role in the offense. The Prosecutor stated:

> That from May 2005 until April 2008, Richard Wesley–also known as "Wes"–Lansdale owned an automobile dealership called Northwest Suzuki, located in Houston, Texas. That dealership was closed in 2008, and he opened another dealership called Northwest Preowned, which is also located in Houston.

> During the course of that time period from 2005 to 2009, when Northwest Preowned was closed, the defendants– Mr. Dominguez, worked at those dealerships as the finance and insurance manager for Mr. Lansdale. Mr. Washington worked as a salesman. Mr. Flanagan and Mr. Pashia wrote insurance binders for customers of both of those dealerships.

> During the course of the time period of the existence of the dealerships, customers would come to the dealerships to purchase vehicles. The salesman were the point persons who first came in contact with the customers. When they found out the customers were not creditworthy to obtain loans to purchase automobiles, Mr. Washington and other salesmen would – was told — would tell Mr. Lansdale and Mr. Dominguez of the situation.

> The customers would complete a five line credit application. And when the customer was not creditworthy to obtain a loan, Mr. Lansdale, with Mr. Dominguez' knowledge and participation, would provide false employment information on the — for the loan applications that were electronically submitted to the various financial institutions. In fact, Mr. Dominguez is aware that Mr. Lansdale recruited Alejandro Barragan and Edgar Barragan to provide false employment and other information for the customers who did not qualify for the loans.

When Mr. Washington and the other salesmen would receive the false employment for a particular customer, Mr. Washington and other salesmen would then coach those customers to tell them that — when the financial institutions would contact them, to say that you worked for a company or an agency for which they did not work and/or earned income which they did not earn.

The loans were then submitted for consideration by the financial institutions and were funded.

Mr. Washington, during the course of the time period that he worked for Northwest Suzuki and Northwest Preowned, was paid a commission and also Mr. Dominguez was paid in excess of $5,000 a month during the time period that he worked there. They — Mr. Washington was involved in vehicular sales for which the financial institutions funded the loans, in his case in excess of $100,000.

Mr. Washington and, in fact, all of the defendants knew that Mr. Lansdale used alias names including James Richardson and Brett Sturrock. Mr. Lansdale, with the knowledge and participation of Mr. Dominguez, utilized Mr. Flanagan and Mr. Pashia, who provided insurance binders for the sale of the vehicles. And in submitting the applications for funding, Mr. Lansdale, with the knowledge and participation of Mr. Dominguez, approached Mr. Flanagan and Mr. Pashia at various times and asked each of them to utilize the — if they could utilize the names of their insurance companies — in this case Mr. Flanagan's Direct Insurance Company and Mr. Pashia's Insurance Company — to be used as a false employment company to be placed on the loans for customers who did not work for either insurance company.

And when insurance companies [sic] would call Mr. Flanagan or Mr. Pashia, they would verify that those customers did work for them when they then well knew that those customers did not work for them. In addition, Mr. Flanagan and Mr. Pashia were aware that other co-defendants and unindicted co-conspirators also provided and made false documents and provided false employment information that was used in other loan applications, for which they did not use the same of their companies, for which Mr. Flanagan and Mr. Pashia wrote insurance binders, knowing that that information contained was false. Those applications, as indicated, your Honor, were submitted to the financial institutions and were funded.

With respect to Mr. Dominguez, further, on or about September 2, 2005, in the Southern District of Texas and elsewhere, the defendant and other co-defendants knowingly defrauded Wells Fargo Bank, San Francisco, California, a member of the Federal Insurance Deposit Corporation, of $17,881.74 by making false information on JE Gallegos, G-A-L-L-E-G-O-S, and EJ Ross, R-O-S-S, in a loan application electronically submitted to Wells Fargo Bank in order to obtain said funds to purchase an automobile from Northwest Suzuki, an automobile dealership located in Houston, Texas.

And with respect to Mr. Flanagan, on or about Lansdale and Dominic Dominguez, the finance manager for the dealership, submitted and caused to be submitted a loan application to Energy Capital Credit Union, which contained false employment and income information as part of a loan application to purchase an automobile for customer ES Pickett, P-I-C-K-E-T-T, indicating that the customer was employed by Direct Insurance and verified by Flanagan. Energy Capital Credit Union was a member of the National Credit Union Administration.

And with respect to Mr. Pashia, on or about February 26, 2007, Lansdale and Dominguez transmitted and caused to be transmitted a wire in interstate commerce a loan application from Northwest Suzuki to Dealer track, Inc. located in Lake Success, New York, which contained false employment and income information as part of a loan application to purchase an automobile for customer DB Kizee, K-I-Z-E-E, indicating that the customer was employed by Pashia Insurance Agency and verified by Pashia, when, in truth and in fact, Kizee never was employed — was never an employee of the Pashia Insurance Agency. That's all, your Honor.

*        *        *        *

The Court: Mr. Washington, tell me in your own words what it is you did to commit the crime you're pleading guilty to.

Defendant Washington: Yes, your Honor. By relating false information to customers for them to obtain financials to buy a vehicle. (Document No. 572, p. 35-39).

Prior to sentencing, a Pre-Sentence Investigation Report ("PSR") was prepared. (Document No. 272). Neither the Government nor Washington filed written objections to the PSR. Washington had a base offense level of 18 under U.S.S.G. § 2X1.1(a). Because Washington accepted responsibility for his activities, and did so timely, his base offense level was reduced by three levels. With an adjusted offense level of 15, and with a criminal history category of III, Washington had an advisory guideline sentencing range of 24 to 30 months. On November 10, 2011, Washington was sentenced to a term of imprisonment of 30 months, to be followed by a three-year term os supervised release, 490,746.25 in restitution and a $199.00 special assessment. (Document No. 304, Transcript of Sentencing Hearing, Document No. 566, P. 9-12). In imposing a 30-month sentence, Judge Harmon stated:

Mr. Washington is before the Court for sentencing after having pled guilty to conspiracy to commit and aid and abet in the commission of mail fraud, wire fraud, loan application fraud, and bank fraud.  In his role as a salesman, he was an average participant within the conspiracy.  He was directed by the owner and the finance manager of a dealership to falsify information on loans that were submitted to three different lending institutions.  He was aware of the scope of the conspiracy, as well as its elaborate and sophisticated Employment Income Verification System, which was used by Mr. Lansdale at the dealership and also through the business owned by the Barragan Brothers.  Throughout his participation in the offense, Mr. Washington was also actively responsible for the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification.

Mr. Washington was on supervised release on a separate federal offense when he participated in the instant offense, that is conspiracy to commit bank theft out of Dallas, Texas.  He completed 46 months in custody and was ordered to pay $95,425.50 in restitution.  Approximately $64,000 of the total amount ordered remains outstanding.  The defendant was early terminated from supervised release on April 6, 2009 and, unknown to the supervision officer, Mr. Washington was committing the additional fraud that's the subject of this case.

He's maintained stable employment at a car dealership since July 2009.  He's married and is the father of two children, ages 9 and 4.  He also suffers from a blood clotting disorder that requires him to test his blood every four or six weeks.  And that he's also hypercoagulant.

I believe that a sentence at the high end of the applicable Guideline range is appropriate viewing the relative culpability of the defendant within the conspiracy and all of the factors that I have listed above.  And I believe that such a sentence is sufficient but not greater than necessary to address the purposes listed in United States Code Section 3553(a).  (Document No. 566, p. 7-9).

Judgment was entered on November 16, 2011. (Document No. 307).  He did not file an appeal.  His conviction became final on November 29, 2011. On or about June 23, 2013, Washington filed the instant motion arguing that his criminal history category was overstated by two points.  Washington argues that because the sentence imposed by the Northern District of Texas, Dallas Division, in *United States v. Washington*, No. 3:02-CR-287-L  had been vacated pending re-sentencing, that it should not have counted for purposes of calculating his criminal history category.  Washington argues that as a result of the vacation of his sentence, he has been " unsentenced" and therefore, his

criminal history category should not have been increased by two points under U.S.S.G. § 4A1.1(d). (Document No. 556 at 4). The Government has answered and has moved to dismiss Washington's § 2255 motion. (Document No. 574).

## II. Discussion

A. Washington's § 2255 Motion is time-barred

The United States argues that Washington's § 2255 Motion should be dismissed because it is time-barred. The Magistrate Judge agrees. On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted. Pursuant to § 2255(f), the one-year limitation period begins to run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Because Washington filed the instant § 2255 motion after the effective date of AEDPA, the provisions of the statute apply. Pursuant to Rule 41(b)(1)(A) of the Federal Rules of Appellate Procedure, Washington had fourteen days from the entry of his final judgment to file his notice of appeal. Washington's judgment was entered on November 16, 2011. (Document No. 307). Because he did not file a direct appeal, Washington's conviction became final on November 29, 2011. Washington's conviction became final on or about November 29, 2011, and expired one year later

on or about November 29, 2012. *See Griffin v. Kentucky*, 479 U.S. 314, 321 n. 6 ("By 'final,' we mean a case of which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."); *United States v. Scruggs*, 691 F.3d 660, 669 (5th Cir. 2013).  Washington's § 2255 Motion was filed on June 23, 2013, nearly seven months after the expiration of the one-year limitations period.  Thus under these circumstances, Washington's § 2255 Motion is untimely under § 2255(f)(1), and is subject to dismissal absent a showing that an alternate date for commencement of the limitations period should be applied under § 2255(f)(2)-(4) or that the limitations period should be equitably tolled.  The Government argues that Washington's § 2255 Motion is subject to dismissal because none of the alternate dates for commencement of the limitations period apply and he has not shown that the limitations period should be equitably tolled.

As for the alternative commencement dates for the one year limitation period provided for in § 2255(f)(2), (3), and (4), none applies.  Washington has not alleged that he was in any way impeded from filing a timely § 2255 motion.  Washington appears to argue that the newly discovered evidence exception of § 2255(f)(4) applies.  "In applying § 2255(f)(4), '[t]he important thing is to identify a particular time when . . . diligence is in order.'"  *United States v. Jackson*, 470 Fed.Appx 324, 327 (5th Cir. 2012)(quoting *Johnson v. United States*, 544 U.S. 295, 308 (2005)).  According to Washington, he only became aware in April 2013 that the sentence imposed by the Northern District of Texas, Dallas Division had been vacated for re-sentencing.  The docket sheet from the Northern District of Texas, Dallas Division shows that the Order was entered in 2005.  Given that *Booker* was issued in 2005, and given that the Court entered the Order in 2005, Washington has not and cannot show that the facts underlying his claim could not have been discovered through the exercise of due diligence by the time his conviction was final.  *See e.g., Johnson*, 544 U.S. at 308,

312 (holding that 3 years between entry of judgment and filing of habeas petition challenging the prior conviction did not constitute due diligence).

Furthermore, upon this record Washington has not shown that the limitations period should be equitably tolled.  The law is clear that only rare and exceptional circumstances may warrant the application of equitable tolling principles to an untimely filed § 2255 Motion to Vacate, Set Aside or Correct Sentence.  *United States v. Petty*, 530 F.3d 361, 364-65 (5th Cir. 2008); *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000).  Equitable tolling, however, is not available if the Movant does not act diligently in attempting to meet the one year limitations deadline.  *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000).  Additionally, the Fifth Circuit has approved the application of equitable tolling in very limited circumstances, "'principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his right.'"  *Fierro* v. *Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002)(quoting *Coleman*, 184 F.3d at 402.  The Fifth had disapproved of the application of equitable tolling for circumstances which are "garden variety claims of excusable neglect." *Lockingbill v. Cockrell*, 239 F.3d 256, 265 (5th Cir. 2002).   The Movant must show "'that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented a timely filing.'"  *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010)(quoting *Pace v. DiGugielmo*, 544 U.S. 408, 418); *see also Lawrence v. Florida*, 549 U.S. 327, 336 (2007).

Here, Washington has filed his § 2255 Motion seven months too late.  Given the absence of any facts in the record which would constitute rare and exceptional circumstances, equitable tolling of the limitations period is not applicable.

Because Washington's §2255 Motion was not timely filed and because there are no grounds available to toll the limitations period, his § 2255 Motion should be denied as time-barred.

B.  Washington's Waiver of Right to Collaterally Challenge Conviction and/or Sentence

The Government further argues that even assuming that Washington's § 2255 Motion had been timely filed, it should be dismissed because he waived his right to collaterally challenge his conviction and/or sentence.

A defendant's wavier of his statutory right to collaterally challenge his conviction with a motion to vacate, set aside, or correct sentence under 28 U.S.C., § 2255, like a waiver by a defendant of his right to appeal, is generally enforceable if the waiver is both knowing and voluntary.  *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)(enforcing defendant's voluntary and knowing waiver of a § 2255 motion).  In this case, the record shows that Washington, as part of his written Plea Agreement, waived his right to appeal, and he also waived his right to collaterally challenge his conviction and/or sentence. (Document No. 215, p. 5-7).  In addition, at his Rearraignment Hearing, the Court engaged in an extended colloquy to ensure that Washington was competent to participate in the Rearraignment proceedings, understood the offense to which he was pleading guilty, the maximum sentence he faced and the rights he was giving up by virtue of pleading guilty.  (Transcript of Rearraignment, Document No. 572, p. 17, 19-20, 27-30).  The record further shows that the Court questioned Washington about the waiver provisions. (Document No. 572, p. 26).   Given Washington's statement's on the record, which carry a strong presumption of verity, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), that he had read and discussed the written Plea Agreement with his counsel, that he understood the statutory and constitutional rights that he was waiving, that he understood the possible range of punishment and how his sentence would be determined, and that he understood that he waived his right to appeal and to file a post conviction proceeding, Washington has not shown that his plea was not counseled, knowing, and voluntary, and upon this record, Washington's waiver of his right to collaterally attack his conviction with a § 2255 Motion is valid

and should be enforced.  It serves as a bar to the instant § 2255 motion being considered by the Court.

C.  Sentencing error claims are not cognizable in a § 2255 proceeding

Finally, the Government argues that even assuming that Washington's § 2255 motion had been timely filed, and assuming further that he had not waived his right to collaterally challenge his conviction, his claim is without merit.  Washington's challenge to the calculation of his criminal history category does not state a claim cognizable under § 2255.  *See United States v. Faubion,* 19 F.3d 226, 232 (5th Cir. 1994)*(*holding defendant's claim that district court erred in making upward departure under Sentencing Guidelines could not be considered in a § 2255 proceeding); *United States v. Walker*, 68 F.3d 931, 943 (5th Cir. 1995), *cert. denied*, 516 U.S. 1165 (1996) ("A district court's calculation under or application of the sentencing guidelines standing alone is not the type of error cognizable under section 2255.").  Moreover, even assuming Washington could challenge the calculation of his criminal history category, his challenge has been rendered moot. On May 27, 2014, United States District Judge Sam A. Lindsay entered a Second Amended Judgment in a Criminal Case.  The same sentence was re-imposed.  Therefore, he has not and cannot show that his criminal history category was incorrectly calculated.

## III.  Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that the Government's Motion to Dismiss Movant's § 2255 Motion (Document No. 574) be GRANTED, and that Movant Kenneth Lee Washington's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 556) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written

objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 26th day of September, 2014.

Frances H. Stacy
United States Magistrate Judge